Apolinar "Paul" BENAVIDES and Stella G. Benavides, Plaintiffs–Appellants,

v.

COUNTY OF WILSON and Marvin H. Baumann, Sheriff, Individually and in his official capacity, Defendants–Appellees.

No. 91–5557.

United States Court of Appeals, Fifth Circuit.

March 5, 1992.

George W. Mauze, II, Jeffrey W. Jones, San Antonio, Tex., for plaintiffs-appellants.

Frederick C. Shannon, Jr., Mitchell L. Weidenbach, Charles Estee, Alan E. Battaglia, San Antonio, Tex., for defendants-appellees.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Apolinar[1] and his wife Stella Benavides brought this § 1983 action against Wilson County and Marvin Baumann, its Sheriff, alleging that both the County and the Sheriff maintained policies that failed adequately to hire, train, and supervise jail personnel. The Benavideses allege that the police seriously injured Apolinar while he was jailed. Stella Benavides also brought pendent state-law claims for loss of consortium and negligent infliction of emotional distress. The district court granted summary judgment to Wilson County, finding that Apolinar Benavides had alleged insufficient evidence that County policy or custom caused his injury. The district court also granted summary judgment for the defendants on Stella Benavides' claims.

We are persuaded that Benavides produced sufficient evidence in response to the motion for summary judgment to create a fact issue as to whether he was injured by the unreasonable force of the deputies. He failed, however, to raise a fact issue as to whether the County was deliberately indifferent in its hiring and training of the deputies. We also find the evidence insufficient to avoid summary judgment on Stella Benavides' state-law claims.

The Benavideses also contend that the district court erred in failing to rule on several procedural and evidentiary motions before ruling on the defendants' motion for summary judgment, but do not explain how the district court's failure to rule on these motions prejudiced them. We find that the district court's failure to address these motions, most of which were untimely filed, was, at worst, harmless error. Therefore, we affirm the district court's grant of summary judgment.

I.

On Saturday, April 29, 1989, a Floresville police officer arrested Apolinar Benavides for public intoxication. According to the police he was drunk and belligerent and they placed him in an isolation cell in the Wilson County jail. A jailer, John Blocker testified that Benavides shouted and banged his head and shoulder on the cell door. Benavides testified that Blocker pushed or hit him causing him to fall and hit his head. It was undisputed that while jailed, Benavides suffered a fractured spinal column that rendered him a permanent quadriplegic.

Benavides testified that both Deputy Blocker and Deputy Urbanczyk checked on him in his cell during the night and that Benavides told them that he could not move and wished to go to the hospital. Neither deputy, however, provided any medical assistance beyond placing Benavides back on his bunk.

On Sunday morning, April 30, 1991, at about 7:00 a.m., Blocker reported Benavides' complaints to the Jail Administrator Schwertlech. Schwertlech went to the cell and looked at Benavides, but he did not call a doctor because he believed that Benavides was "faking it."

According to Benavides' testimony, this was the pattern on Sunday. Urbanczyk or Schwertlech would check Benavides as he lay in his cell. Benavides would then complain that he was paralyzed and request hospitalization, but he was unable to persuade any deputy, and they left him lying in his cell. Unable to get up, he lay in his own urine.

Wilson County Sheriff Marvin Baumann was not present at the jail when Benavides was first arrested on Saturday, but he visited the jail briefly Sunday afternoon.

---

1. Apolinar Benavides died while this appeal was pending.

Schwertlech told Baumann that an inmate would probably have to be taken to the State hospital. According to Baumann, Schwertlech did not identify the inmate or describe his complaints. Schwertlech remained on duty until 7:00 p.m., but never called an ambulance.

On Sunday evening, around 8:00 p.m., Blocker, again on night shift, telephoned Baumann and told him that Benavides' wife was at the jail to pick him up but he would not get up. By this time, Benavides had been paralyzed for 18 hours and had defecated on himself. Baumann instructed Blocker to call an ambulance for Benavides. The ambulance which arrived at 8:10 p.m. was the first furnished medical assistance.

Sheriff Baumann requested an investigation by the Texas Rangers into Benavides' injury. The Ranger investigation concluded that Benavides' injury was self-inflicted and that there was no mistreatment or misconduct by jail personnel. Sheriff Baumann took no disciplinary action against any employee.

There was evidence from which a jury could reasonably conclude that Schwertlech and Urbanczyk both had suffered from psychological disorders before the accident. Both had been hospitalized for depression and alcoholism and Schwertlech was being treated with Lithium. Urbanczyk had attempted suicide and had suicidal thoughts before treatment, but according to his medical report, these suicidal tendencies had been cured when he was discharged from the hospital. Both Urbanczyk and Schwertlech had received "fit to work" letters from various doctors. Sheriff Baumann testified that he relied on these letters in hiring the two deputies.

A peace officer, John Sexton, testified as an expert witness for Benavides that Wilson County failed to hire, supervise, and train its jailers and peace officers in accordance with national and state standards. The district court found that Sexton provided no reasoning or factual basis for his conclusions and that Benavides never presented Sexton's qualifications as an expert. While not explicitly finding that Sexton's testimony was inadmissible as expert testimony, the district court implicitly did so, concluding that it was "insufficient to raise a fact issue as to [the] existence of an unconstitutional policy or custom." Benavides also pointed out that none of the three employees had received any special medical training outside of the training that all certified jailers and peace officers must receive under Texas law. Benavides also produced an autopsy report describing the death in 1986 of an inmate from head injuries suffered while jailed in Wilson County. According to the autopsy report he probably died as a result of a fall suffered while under the influence of correction fluid.

Baumann and Wilson County presented the following undisputed evidence of adequate training and hiring policies. First, Baumann relied on the state certification of his staff as peace officers and as jailers to insure that the staff would be properly trained. Blocker, Schwertlech, and Urbanczyk were all certified peace officers and had therefore completed at least 320 hours of instruction, including an unspecified number of hours of instruction in the use of force and emergency medical care. All three were also reserve deputies and had therefore received ten hours of additional first aid training and C.P.R. instruction. As licensed jailers, Blocker and Schwertlech had received at least 36 hours of instruction, including a course on evaluating the physical condition of prisoners.

Baumann stated that his normal hiring procedure was to interview personally all prospective employees and to check all applicants for any prior criminal record. He telephoned previous employers to inquire about job applicants, and he checked prospective employees' credit history. Finally, Baumann testified that, to be licensed for the position of peace officer, the applicant must meet certain minimum educational requirements and have a psychological and physical examination. Baumann conceded that, apart from on-the-job training, the County did not provide any training over and above what the state of Texas requires for jailer and peace officer certification.

## II.

■ For the purposes of summary judgment, we resolve all factual issues in favor of Benavides. A jury could reasonably conclude Wilson County jail employees either struck Benavides with force sufficient to break his back or later ignored his pleas for medical help. That is, a jury could reasonably conclude that the three Wilson County deputies purposely denied Benavides due process of law and his right to be free from cruel and unusual punishment under the eighth amendment. *See Wilson v. Seiter,* — U.S. ——, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).

■ Benavides, however, sues Wilson County and Sheriff Baumann, not the three deputies. In a § 1983 action, a municipality may not be held strictly liable for the acts of its non-policy-making employees under a *respondeat superior* theory. *Oklahoma City v. Tuttle,* 471 U.S. 808, 817–18, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Under certain circumstances, however, a municipality may incur § 1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts. In order to prove that a municipal hiring or training policy violated his rights under § 1983, Benavides must show that (1) the training or hiring procedures[2] of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205–07, 103 L.Ed.2d 412 (1989).

A municipality acts with "deliberate indifference" in adopting an otherwise constitutional policy if

> "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*City of Canton,* 109 S.Ct. at 1205. *See also Wassum v. City of Bellaire, Texas,* 861 F.2d 453, 456 (5th Cir.1988) (plaintiff must show that hiring practice constituted "gross negligence amounting to conscious indifference to the welfare of the public").

Benavides argues that the hiring and training policies were inadequate in the three specific ways (1) Baumann failed to provide medical training to Blocker, Schwertlech, and Urbanczyk; (2) Baumann hired Schwertlech and Urbanczyk, despite their history of mental disorders and alcoholism; (3) Baumann failed to obtain Schwertlech's medical records, consult with the employees' doctors, or inquire into the specific mental disorders suffered by the three employees.[3]

### A.

■ Benavides contends that Baumann provided inadequate medical training for his deputies which amounted to deliberate indifference to arrestees' constitutional rights and that this failure to train caused

---

2. Benavides also refers to Baumann's failure to supervise adequately, but does not point to any evidence of inadequate supervision different from evidence of inadequate hiring and training. Therefore, we treat the allegations of inadequate supervision simply as repetitions of the allegations of inadequate hiring and training.

3. Benavides contends that the autopsy report of John Talley, who died of injuries sustained while confined in Wilson County jail, constitutes evidence of the jail staff's past deliberate indifference to inmates' medical needs. However, the autopsy report indicates only that Talley slipped, fell, and injured himself while in jail and died four days later. Nothing in the report indicates that the jail staff failed to summon medical attention promptly. Benavides' motion to supplement the record contained allegations that Blocker was involved in an incident in which he engaged in "violent and abusive" behavior. The motion requested leave to add eight fact witnesses to Benavides' interrogatory answers who would testify about this incident. However, there is no affidavit or deposition from these witnesses in the record. Lacking any record evidence of the incident, we cannot consider it in reviewing the district court's summary judgment order. *See Davis v. City of Ellensburg,* 869 F.2d 1230, 1234 (9th Cir.1989).

the deputies to provide constitutionally inadequate medical care to Benavides. We find no evidence that the alleged inadequacies in the deputies' medical training were "so obvious ... and likely to result in violations of constitutional rights" that Sheriff Baumann can be said to have been deliberately indifferent to such rights in adopting his training policy.

An adequate training program must "enable officers to respond properly to the usual and recurring situations with which they must deal." *City of Canton*, 109 S.Ct. at 1205. It is undisputed that Blocker and Schwertlech were certified jailers and that Urbanczyk was a certified peace officer at the time of Benavides' injury. Texas law requires that these officers receive at least 10 hours of basic medical training for certification. Benavides has produced no evidence suggesting that the deputies received less than the basic medical training required by Texas law. Benavides must show, therefore, that this legal minimum of training was inadequate to enable the deputies to deal with "usual and recurring situations" faced by jailers and peace officers.

Benavides produced no evidence that the deputies' medical training was inadequate. There was no record evidence of either the content of national or state standards for peace officers or jailers or of prior incidents at the Wilson County Jail that might indicate a need for more medical training of deputies. Indeed, Benavides never described the training that the deputies allegedly lacked that was necessary for adequate job performance.

As for Sexton's deposition testimony, the district court was well within its discretion in finding the deposition inadmissible as expert testimony. Sexton's statements relevant to Benavides' assertions of a deliberately indifferent policy or custom are only assertions that the training, employment screening, and supervision of Wilson County employees did not meet minimum standards.[4] Sexton's expert qualifications were never presented to the court.[5] Moreover, as the district court noted, Sexton never described the content of the standards to which he referred or explained how the deputies' training failed to meet those standards.

"Without more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987). In this case, Benavides never supplied Sexton's credentials and Sexton's assertions were only his "subjective opinion," unrooted in factual foundation or proven expertise. Sexton asserted that the deputies' training fell short of state and national standards, yet never described the specific shortfall. His testimony was "pure speculation" and therefore inadmissible. *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1124 (5th Cir. 1988).

Absent Sexton's deposition excerpts, Benavides had nothing but his own allegations to establish that the deputies' training was so obviously inadequate that the County was deliberately indifferent in not improving it. But "conclusory allegations of ... 'grossly inadequate training'" do not make out a case of a deliberately indifferent policy. *Rodriguez v. Avita*, 871 F.2d 552, 555 (5th Cir.), *cert. denied*, 493 U.S.

---

**4.** Sexton states that (1) he does not "believe [that Baumann performed] a professional investigative background [check] on these people [sufficient] to hire them as full-time jail officers or full-time peace officers"; (2) "if the ... jail officers were supervised ... the supervisor would've seen the inadequacy of the officer and supervised him right, [and] this [unconstitutional treatment] may not have occurred"; (3) Baumann "failed to hire, screen, train, investigate and supervise its officers and jailers in accordance with acceptable state and national standards" including the "Texas Jail Commission [standards]"; and (4) the "believe[s] [that] if [the employees] were trained with other train-

ing they would've recognized the needs of this inmate by some method of finding out what was wrong with him."

**5.** Benavides contends that the district court never ruled on the admissibility of this evidence. However, the district court's finding that Sexton's qualifications were never presented and that his statements lacked any apparent factual basis necessarily lead to the conclusion that Sexton's testimony in the deposition excerpts was inadmissible. *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir.1991) (en banc).

854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989). Without producing any evidence, Benavides invites a per se rule that a county is deliberately indifferent to its jailers' and peace officers' training whenever it relies exclusively on state certification requirements to ensure that its deputies are adequately trained. We are pointed to nothing supporting such a blanket proposition. *Cf. D.T. by M.T. v. Indep. School Dist. No. 16*, 894 F.2d 1176, 1179, 1193–94 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990) (municipality not deliberately indifferent when policymaker relied on state certification to insure that teacher lacked criminal record).

### B.

■ Benavides also alleges that Baumann's deliberately indifferent policy of inadequate screening of prospective employees led him to hire unfit jailers and deputies whose unfitness caused them injury. The basis for Benavides' contention of a deliberately indifferent hiring policy is Baumann's decision to retain two employees, Urbanczyk and Schwertlech, who suffered from suicidal depression and alcoholism with a history of hospitalization for their treatment. As we noted, allegations about a prior act of violence by Blocker are unsupported by record evidence. Therefore, Benavides' factually supported contentions are that Baumann was deliberately indifferent in failing to examine the medical histories of Schwertlech and Urbanczyk more carefully.

Baumann relied on letters from physicians stating that both employees were fit to work. Schwertlech's physician wrote a letter stating that Schwertlech "is able to resume his activities prior to hospitalization" as long as Schwertlech "remain[ed] compliant with the prescribed treatment plan." He also stated that he had "faith in Mr. Schwertlech that he will remain compliant with his treatment." Urbanczyk's doctor signed a form provided by the Texas Commission on Law Enforcement Officer Standards and Education stating that Urbanczyk was in satisfactory medical and psychological condition. An-

other doctor signed a letter stating that Urbanczyk could "now return to work without any restrictions."

There is no evidence that Baumann would have discovered anything that would have induced him to dismiss the deputies if he had spoken to the doctors in more detail about the deputies' hospitalization. The reports stated that Urbanczyk was cured of suicidal ideation and had stopped drinking upon his discharge from the hospital. Schwertlech's report states that he, too, had a drinking problem and suffered from depression before treatment, but that he was fit for work as long as he took his medication.

Baumann also could not have inferred that Schwertlech and Urbanczyk were unfit to work from their job performance. There is no evidence that Schwertlech's and Urbanczyk's mental disorders interfered with their work, even before they were treated. The "patient history" attached to Urbanczyk's psychiatric records states that "does his job very well ... and is liked by the public." The report also stated that, unlike some other members of the sheriff's staff, Urbanczyk never drank while on duty. Likewise, Benavides never alleges that either Urbanczyk or Schwertlech had ever been negligent in the performance of his duties before the Sunday incident.

In short, evidence from which a jury might infer that the Wilson County jail employees were unfit for service at the time that they were hired is thin indeed. The fact that Baumann failed to research Schwertlech's and Urbanczyk's medical histories does not indicate that Baumann was deliberately indifferent in hiring or retaining such people to work as jailers and deputies. *Stokes v. Bullins*, 844 F.2d 269 (5th Cir.1988) is instructive. In *Stokes*, the municipality hired an individual without discovering his history of fifteen arrests for offenses ranging from assault to armed robbery. The municipality did not request a National Crime Information Center Check which would have disclosed his criminal history. The officer later shot and permanently disabled a driver who owed a

traffic fine, apparently because the driver had been impertinent.

The *Stokes* court affirmed the district court's grant of summary judgment to the defendant. The court held that the town's investigation of the applicant's prior employment history and their investigation of recent arrests of the officer for relatively trivial offenses sufficed to show that the town was not deliberately indifferent in hiring the officer. In justifying this result, the *Stokes* court stated that it declined to make performance of a NCIC check a constitutional requirement. *Id.* at 275. The town's good faith hiring effort was adequately demonstrated by its review of the applicant's employment history and its review of those arrests that were brought to its attention.

Under *Stokes*, the evidence here raises no fact-issue of deliberate indifference based upon Baumann's failure to conduct further investigations of his deputies. We declined to impose a constitutional requirement of further investigation in *Stokes* when the municipality's hiring was based on good-faith investigation of the applicant's known arrest record. Likewise, we cannot see how it should have been obvious to Baumann that further investigation was needed after obtaining fit-to-work letters from physicians giving him reasonable assurance of the deputies' mental health. *See Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085 (7th Cir.1990) (police chief is not deliberately indifferent to mental competence of police officer when he relies on physician's letter certifying that officer was fit for work).

Benavides brings this § 1983 action against Sheriff Baumann in Baumann's individual capacity as well as in Baumann's official capacity as sheriff. There is no genuine issue of fact as to whether Baumann was deliberately indifferent to arrestees' constitutional rights in hiring or training. Because Benavides suggests no other basis for Baumann's individual liability, we affirm the district court's order of summary judgment in Benavides' action against Baumann individually as well as in Benavides' action against Wilson County.

## III.

■ Stella Benavides contends that the district court erred in granting summary judgment on her state-law claims. We disagree. Mrs. Benavides' claim for loss of consortium is derivative of her husband's claims against the defendants. *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex.1990), *overruled in part*, 34 Tex.Sup.J. 419 (1991). Because the district court properly granted summary judgment against Mr. Benavides, Mrs. Benavides' derivative claim for loss of consortium is also barred. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980).

■ We also find that the district court properly granted summary judgment on Mrs. Benavides' claim for negligent infliction of emotional distress. Texas courts recognize such a cause of action. *See Freeman v. City of Pasadena*, 744 S.W.2d 923, 924 (Tex.1988); *Landreth v. Reed*, 570 S.W.2d 486, 489 (Tex.Civ.App.—Texarkana 1978). However, a plaintiff may not recover as a "bystander" for emotional distress caused by the death or physical injury of a loved one unless her emotional distress was reasonably foreseeable by the defendant. *City of Austin v. Davis*, 693 S.W.2d 31, 33 (Tex.App.—Austin 1985 writ ref. n.r.e.). In order to prove such reasonable foreseeability, the plaintiff must prove, among other things, that her emotional distress "resulted from a direct emotional impact ... from the sensory and contemporaneous observance of the incident, as contrasted with learning of the accident from others after the occurrence." *Reagan*, 804 S.W.2d at 467. If a plaintiff learns about the injury incurred by her loved one from an intermediary before she actually sees the injured person, she cannot recover under a "bystander" theory of liability. *Hewitt v. Chadwick*, 760 S.W.2d 333, 334 (Tex.App.—Texarkana 1988).

Mrs. Benavides saw her husband for the first time after his injuries when she went to the jail to pick her husband up on Sunday evening. When Mrs. Benavides arrived at the jail, she saw her husband being taken from the jail on a stretcher to a

waiting ambulance. She contends that seeing her injured husband on the stretcher constitutes a "contemporaneous observance" that could support a finding of bystander liability.

The undisputed facts indicate that Mrs. Benavides did not "experience the shock of unwittingly coming upon the accident scene." *National County Mut. Fire Ins. Co. v. Howard*, 749 S.W.2d 618, 622 (Tex. App.—Fort Worth, 1988). On Sunday morning, Mrs. Benavides came to pick her husband up. According to the Benavides' own brief on appeal, the jail staff informed her that "her husband would not get out of bed and complained of being paralyzed." Again, according to the Benavides' brief, Mrs. Benavides became "very upset and worried ... after a jailer told her that her husband was acting paralyzed." She then left the jail without seeing her husband. Later on Sunday, Mrs. Benavides called a relative who had visited her husband in jail. Mrs. Benavides testified in her deposition that "my husband told [the relative] that he was paralyzed and that he was not going to get out of there walking, that he had to go in an ambulance, a stretcher or in a wheelchair."

The undisputed facts indicate that Mrs. Benavides learned from others about her husband's injury before seeing him on the stretcher on Sunday evening. Therefore, the district court did not err in granting summary judgment to the defendants on Mrs. Benavides' claim for negligent infliction of emotional distress.

AFFIRMED.