**Michael Shane HAZELTON, Plaintiff,**

v.

**The CITY OF GRAND PRAIRIE, TEXAS, Derrell Wynne, Individually, and Romero Moreno, Individually, Defendants.**

**Civil Action No. 3:96–CV–2449–P.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 9, 1998.

Michael David Deegan, Deegan & Bush, Fort Worth, TX , William Harrison Ray, Law Office of William H 'Bill' Ray, Fort Worth, TX, Jimmy Carroll Minter, Law Office of Jim Minter, Fort Worth, TX, for Plaintiff.

Kent Donovan Williamson, McCauley Mac-Donald & Devin, Dallas, TX, Edwin A. P. Voss, Jr., Joe C. Tooley, Law Office of Joe C. Tooley, Dallas, TX, James Thomas Jeffrey, Jr., Remington & Jeffrey, Arlington, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Presently before the Court are the following:

1. Defendant Derrell Wynne's Motion for Summary Judgment and Brief in Support, filed on April 15, 1997;

2. Plaintiff's Response to Defendant Derrell Wynne's Motion for Summary Judgment and Brief in Support, filed on May 13, 1997;

3. Defendant City of Grand Prairie's Motion for Summary Judgment and Brief in Support, filed on June 17, 1997;

4. Plaintiff's Response to Defendant City of Grand Prairie's Motion for Summary Judgment and Brief in Support, filed on July 2, 1997;

5. Defendant City of Grand Prairie and Defendant Derrell Wynne's Partial

Motion to Dismiss Pursuant to Rule 12(b)(6), filed on July 24, 1997;

6. Plaintiff's Response to Defendant City of Grand Prairie and Defendant Derrell Wynne's Partial Motion to Dismiss and Brief in Support, filed on August 7, 1997;

7. Defendant City of Grand Prairie's Motion for Entry of Judgment on Plaintiff's State–Law Claims and Brief in Support, filed on July 29, 1997;

8. Plaintiff's Response to Defendant City of Grand Prairie's Motion for Entry of Judgment and Brief in Support, filed on July 31, 1997;

9. Defendant Romero Moreno's Motion and Brief Pursuant to Fed.R.Civ.P. 12(b)(6), filed on December 8, 1997; and

10. Plaintiff's Response to Defendant Romero Moreno's Motion to Dismiss, Pursuant to Fed.R.Civ.P. 12(b)(6), and Brief in Support, filed on December 22, 1997.

## BACKGROUND

Plaintiff Michael Shane Hazelton ("Plaintiff" or "Hazelton") has filed suit against Defendants The City of Grand Prairie ("City"), Derrell Wynne ("Wynne"), individually, and Romero Moreno ("Moreno"), individually (collectively referred to as "Defendants"). Specifically, Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1983 against the Defendants for violations of his constitutional rights. In addition, Plaintiff alleges violations of state common law against Wynne and Moreno for assault, battery, false imprisonment, negligence, gross negligence, and intentional infliction of emotional distress. Plaintiff also asserts a claim for false arrest against Wynne. Finally, Plaintiff asserts a state law cause of action against the City for violations of Tex.Civ. Prac. & Rem Code Ann. § 101.001, *et seq.* ("Texas Tort Claims Act").

Plaintiff's lawsuit arises out of an incident which occurred on September 15, 1994. After completing his shift at work and cashing his payroll check, Hazelton bought a six pack of beer. (Plaintiff Aff., ¶¶ 10–11). As Hazelton was driving home, his car ran out of gas, so he began walking to a store to obtain gasoline for his automobile. Since the nearest gasoline station was some distance away, Hazelton stopped to rest. As he was resting on the curb, Wynne and an unnamed officer approached Hazelton and, after a brief inquiry, asked him to participate in a field sobriety test. Plaintiff asserts that he complied with Wynne's request to recite the alphabet. When Wynne asked him to start with "F" and recite backwards, however, Hazelton had difficulty responding, due to an alleged laming disability. When Wynne refused to allow Plaintiff to count with his fingers, Plaintiff refused to perform the requested test. (Plaintiff Aff., ¶ 44a).[1] Hazelton claims that he informed Wynne of his disability, but Wynne arrested him and charged Hazelton with public intoxication.

After placing Hazelton under arrest, Wynne took him to the Grand Prairie Police Department jail. Upon arriving at the jail, Hazelton surrendered his personal belongings, including a total of two hundred and thirty-four dollars.[2] After pulling off his boots and being instructed to turn his socks inside out, Hazelton said "make me." (Plaintiff Aff., ¶ 65). Upon hearing this remark, Wynne allegedly said, "you shouldn't have said that, they're going to make it hard on you." (Plaintiff Aff., ¶ 66). Moreno proceeded to search Hazelton and then he placed Hazelton in a cell with seven or eight other individuals.

After being placed in the cell, Hazelton attempted to make a phone call. When the phone would not operate properly, he slammed the receiver. (Plaintiff Aff., ¶¶ 78–84). Shortly after Hazelton slammed the phone, Moreno came into the cell and told Hazelton to lay down on the floor. Moreno handcuffed him and took Hazelton to another

---

1. In his affidavit, Wynne testifies that when Hazelton could not count backwards, he "refused to do **any** other tests." (Wynne Aff., at 2) (emphasis added).

2. Plaintff claims that two-hundred dollars of this total amount was in four $50 bills which were folded in his wallet. (Plaintiff Aff., ¶ 55).

cell, which was isolated from the other detainees. Hazelton claims that when Moreno handcuffed him and took him to the other cell, Moreno broke at least one bone in his hand, which eventually required surgery. Additionally, Hazelton claims that the officers would not allow him to use the bathroom despite his repeated requests, so he urinated in his pants.

Eventually, Hazelton's girlfriend posted bag and an unknown employee of the City processed his release. According to Hazelton, this unknown employee inquired as to Hazelton's ability to sign the release forms, due to the condition of his hand. Plaintiff asserts that he did not file a complaint while being released from the jail because he was too afraid to complain about the injuries he had sustained. After his release, Plaintiff alleges that he counted his money and discovered that the four $50 bills were missing from his billfold. Plaintiff then proceeded to the emergency room at North Hills Medical Clinic, where an x-ray showed that his hand was broken.

Plaintiff filed this lawsuit on August 29, 1996. On June 25, 1997, the Court entered a Memorandum Opinion and Order ("June 25 Order") which granted in part and denied in part Defendants' Motion to Dismiss. Specifically, the June 25 Order dismissed Plaintiff's claims against Wynne in his official capacity.[3] The Court also dismissed Plaintiff's intentional tort claims, if any, against the City. (June 25 Order, at 16).[4] Further, the June 25 Order allowed Plaintiff to replead with more specificity his § 1983 constitutional tort claims against the City for inadequate discipline and his state law negligence claim

against the City. (June 25 Order, at 8, 16). The June 25 Order also required Plaintiff to file a response to Wynne's qualified immunity defense on Plaintiff's federal claims against Wynne individually. (June 25 Order, at 13). Finally, the June 25 Order declined to dismiss Plaintiff's § 1983 claim against the City for failure to train and his state tort law claims against Wynne in his individual capacity. (June 25 Order, at 5, 15). In light of the decisions rendered by the Court in the June 25 Order, the Amended Complaint filed on July 14, 1997, and Plaintiff's Reply to Wynne's qualified immunity defense on the federal claims, the following claims remain before the Court for disposition:

1. Plaintiff's § 1983 claim against Wynne individually for violations of Plaintiff's federal rights;[5]

2. Plaintiff's state tort law claims against Wynne individually;[6]

3. Plaintiff's § 1983 claim against the City for failure to train and inadequate discipline;[7]

4. Plaintiff's claims against Moreno individually;[8] and

5. Plaintiff's state law negligence claim against the City.[9]

## DISCUSSION

### I. CITY'S MOTION FOR ENTRY OF JUDGMENT

In light of the June 25 Order dismissing any state-law intentional tort claims against the City, Defendant filed a Motion for Entry of Judgment on July 29, 1997. Plaintiff filed a timely Response, asserting that there were

---

3. Plaintiff claimed that he never sued Wynne under § 1983 in his official capacity. Based on this acknowledgment, the Court denied Defendants' motion to dismiss as moot. The Court went on to say, however, that if there were any § 1983 claims against Wynne in his official capacity, these were dismissed with prejudice. (June 25 Order, at 8). Further, the Court dismissed all of Plaintiff's state law claims against Wynne in his official capacity. (June 25 Order, at 9–10).

4. Plaintiff asserts that there were no intentional tort claims filed against the City. (Plaintiff's Response to City's Motion for Entry of Judgment, at 1).

5. This claim is the subject of Wynne's Motion for Summary Judgment, filed on April 15, 1997.

6. *Id.*

7. This claim is the subject of the City's Motion for Summary Judgment, filed on June 17, 1997.

8. This claim is the subject of Moreno's Motion to Dismiss, filed on December 8, 1997.

9. This claim is the subject of the City's Partial Motion to Dismiss, filed on July 24, 1997.

never any claims against the City for intentional torts and pointing out that entering a final judgment might preclude a cause of action against Wynne individually.[10] The Court has previously decided that the City is not labile for any state-law intentional torts. Because there remain other claims against the City, however, the Court declines to enter final judgment on this issue at this time. Thus, the City's Motion for Entry of Judgment is DENIED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to demonstrate the existence of the required elements of the party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment; the party defending against a motion for summary judgment Cannot defeat the motion unless it provides specific facts that show the case presents a genuine

issue of material fact, such that a reasonable jury might return a verdict in its favor. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgement are likewise insufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir.1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. Finally, in reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the submitted documents to which the nonmoving party directs its attention. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir.1992).

### A. Wynne's Motion for Summary Judgment

Pursuant to the guidelines of *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir.1995) (en banc), the June 25 Order allowed Plaintiff to file a Reply to Wynne's qualified immunity defense. Plaintiff timely filed this Reply. The Court finds that Plaintiff's Reply has stated sufficient facts to avoid dismissal. Nevertheless, as discussed below, the Court finds that Plaintiff's § 1983 claims against Wynne fail as a matter of law.[11]

---

**10.** Plaintiff simply cites Tex.Civ.Prac. & Rem. Code § 101.106 for this position, without any further elaboration.

**11.** In his Response to Wynne's Motion for Summary Judgment, Plaintiff suggests that Wynne's motion only addresses the alleged Fourth Amendment violation. Plaintiff asks the Court to give him an opportunity to respond "if the Court is of the opinion that the Motion for Summary

Judgment addresses more than the Fourth Amendment." The Court DENIES Plaintiff's request and finds that Wynne's Motion for Summary Judgment seeks judgment as a matter of law as to Plaintiff's sole § 1983 claim.

Initially, to the extent that Plaintiff has attempted to assert a violation of the Eighth Amendment, the Court finds that Plaintiff has not articulated a viable claim, since the protections of the Eighth Amendment only apply to convict-

It is well settled that a public official enjoys a qualified immunity not merely from liability, but from suit. *Salas v. Carpenter*, 980 F.2d 299, 301 (5th Cir.1992) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Thus, public officials are immune from civil-rights claims brought against them under 42 U.S.C. § 1983 if "their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995), *cert. denied*, 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996). In order to bring a viable § 1983 claim against a police officer, therefore, the plaintiff must show not only (1) that the defendants violated a clearly established constitutional right but also (2) that their conduct was objectively unreasonable. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996); *see also Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Plaintiffs are required to assert specific facts rather than relying on conclusory allegations in order to assert a claim against individual officers. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir.1985). In this case, whether Hazelton was actually intoxicated at the time of his arrest or whether a jury acquitted him of the public intoxication charge is irrelevant. The Court does not view Wynne's actions in hindsight; rather, the focus is on whether Wynne was reasonable in believing that Hazelton was intoxicated at the time of his arrest. *Gibson v. Rich*,

44 F.3d 274, 278 (5th Cir.1995). The reasonableness of a police officer's activities when examining a qualified immunity claim is a question of law. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994).

It is clear that false arrest is considered a violation of a citizen's rights. Nevertheless, there is no cause of action for false or unlawful arrest unless the arresting officer lacked probable cause. *Mangieri*, 29 F.3d at 1016; *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir.1991). Probable cause does not require overwhelming evidence, only reasonably trustworthy information. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The test for whether an officer had probable cause to arrest is "if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Mangieri*, 29 F.3d at 1016 (citing *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)). Thus, the central question in Plaintiff's § 1983 action against Wynne turns on whether probable cause existed to arrest Hazelton. If there was probable cause, then Plaintiff has failed to show that Wynne's actions were unreasonable and Wynne can assert his qualified immunity defense to avoid § 1983 liability.

The following is a description of the relevant events on the evening of Hazelton's arrest. Sometime after 9:00 pm, the police dispatcher sent Wynne and his partner to Northwest Seventh and Safari Street in Grand Prairie.[12] Wynne began an interview

---

ed prisoners, not pretrial detainees such as Hazelton. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996) (citations omitted). Of course, pretrial detainees can draw on the procedural and substantive due process guarantees of the Fourteenth Amendment to claim rights that are at least coextensive with the rights of prisoners, including the right to be free from unnecessary and excessive force. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1186 (5th Cir.1986). As this Court noted in its June 25 Order, however, Plaintiff has essentially asserted one cause of action against Wynne in his individual capacity. Specifically, Plaintiff claims that Wynne arrested him without probable cause and with conscious indifference to the rights of Plaintiff. (June 25 Order, at 12).

In fact, Plaintiff's Second Amended Complaint (the most recent Complaint as of the date of this Order) asserts the identical, verbatim § 1983 action against Wynne as the Original Complaint and the First Amended Complaint. As discussed in the Court's Opinion below, the key issue for Wynne's qualified immunity defense is whether he acted reasonably. Once this issue is resolved in favor of Wynne, the defense of qualified immunity serves to bar any and all of Plaintiff's federal claims under § 1983 against Wynne individually.

12. Plaintiff asserts that he "think(s) the time was around 9:30 pm;" (Plaintiff Aff., ¶ 29). Wynne, on the other hand, says it was "about 11:05 pm." (Wynne Aff., at 2). Also, Wynne says Plaintiff was "laying on the sidewalk" (Wynne Aff., at 2),

with Hazelton and during this inquiry, Hazelton told Wynne that he "had drank one and a half beers about two hours before and that (he) had run out of gas." (Plaintiff Aff., ¶ 37). Wynne then began to administer field sobriety tests to Hazelton. After reciting the alphabet, Wynne asked Hazelton to say the alphabet backwards, starting with the letter "F."[13] Plaintiff asserts that he "tried (to complete the test), but couldn't do it because of (his) learning disorder." (Plaintiff Aff., ¶ 42). Hazelton informed Wynne of his learning disorder and when Wynne would not allow him to count on his fingers, Hazelton refused to continue. (Plaintiff Aff., ¶ 44a).[14] Immediately after this exchange, Wynne placed Hazelton under arrest for public intoxication.[15]

Based on the facts and circumstances surrounding this case, the Court finds that Wynne did not act unreasonably and therefore he is not individually liable under § 1983. Hazelton admits that he had consumed a beer and a half earlier in the evening. Wynne detected alcohol on Hazelton's breath and noticed that his eyes were bloodshot. Hazelton refused to complete at least one field sobriety test, claiming that a learning disability prevented him from completing the requested test. Finally, Hazelton was looking for gasoline station so he could refuel his vehicle and drive home. The Court finds that these facts would have given an objectively reasonable officer probable cause to arrest Hazelton for public intoxication. Thus, Wynne is entitled to assert the defense

of qualified immunity to Plaintiff's § 1983 claim and Wynne's Motion for Summary Judgment is GRANTED.

■ Plaintiff also alleges that Wynne is liable for the injuries he incurred while in jail, asserting that Wynne knew Plaintiff would be injured when he said "you shouldn't have done that, they're going to make it hard on you." (Plaintiff Aff., ¶ 66). Apparently, this is the sole evidence Plaintiff has for holding Wynne individually liable for his physical injuries, since Plaintiff admits that Wynne was not present when the jail officers placed him in the cell. (Plaintiff Aff., ¶ 74). The Court finds that this one statement is insufficient and too vague to hold Wynne liable for his injuries. Wynne's statement could have a variety of different meanings and it is not clear that Wynne knew that Plaintiff would be subjected to excessive force. The Court rejects Plaintiff's assertion and finds that Wynne is not liable under § 1983 for the injuries caused to Plaintiff while in jail.

■ Wynne has also moved for summary judgment on Plaintiff's state law claims.[16] Specifically, Wynne asserts that he is entitled to qualified immunity (or "official immunity") in order to avoid liability on these state common law claim alleged by Plaintiff. Invoking a qualified immunity defense under Texas law requires a defendant to satisfy slightly different elements than for the defense to federal claims. *Lang v. City*

while Plaintiff asserts that he simply "sat down on the curb." (Plaintiff Aff., ¶ 26).

13. According to the affidavit submitted by Wynne, he asked Hazelton to "count backwards." (Wynne Aff., at 2). Although this discrepancy is immaterial to the Court's decision, the Court assumes, for purposes of summary judgment, that Wynne requested Hazelton to recite the alphabet backwards, starting with "F."

14. Plaintiff is inconsistent in explaining whether he simply refused to continue with the specific test of saying the alphabet backwards or whether he refused any further sobriety tests. Plaintiff's affidavit states that "he did not refuse to continue with the test until ...," indicating that he only refused the test which required him to recite backwards. (Plaintiff Aff., ¶ 44a) (emphasis added). However, in the Disputed Facts section of Plaintiff's Response, Plaintiff asserts that he

"only refused to perform **any tests** administered ... because Defendant Wynne would not let Plaintiff count on his fingers." (Plaintiff's Response, at 3) (emphasis added). Further, this section of the Response cites to paragraph # 44a of Plaintiff's affidavit. Finally, the affidavit of Wynne states that "Mr. Hazelton refused to do **any other tests**." (Wynne Aff., at 2).

15. Tex. Penal Code § 42.08(a) provides:

An individual commits an offense if the individual appears in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself or another.

Tex. Penal Code Ann. § 42.08 (Vernon 1989).

16. Plaintiff's Response wholly fails to address the qualified immunity defense as it relates to the state law causes of action.

*of Nacogdoches,* 942 S.W.2d 752, 764 (Tex. App.—Tyler 1997, n.w.h.). The Texas Supreme Court recently held that public officials are entitled to immunity from suit when performing (1) discretionary duties in (2) good faith as long as the official is (3) acting within the scope of his or her authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994).

There is little dispute that Wynne was performing a discretionary duty and acting within the scope of his authority when he arrested Plaintiff. The key element to his qualified immunity defense as to Plaintiff's state law claims is, therefore, whether Wynne acted in good faith when he arrested Hazelton. The Texas Supreme Court has articulated a new test for this "good faith" element, which analyzes the action of the officer under a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997); *Chambers,* 883 S.W.2d at 656; *see also Tamez v. City of San Marcos,* 118 F.3d 1085, 1097 (5th Cir.1997) (clarifying standard of "good faith" under Texas law).

Based on the circumstances and as discussed above, Wynne's actions were objectively reasonable when he arrested Hazelton for public intoxication. Wynne detected alcohol on Hazelton's breath, Hazelton could not complete at least one field sobriety test (of course, Hazelton claims this was due to his learning disability), Hazelton refused Wynne's request to continue the testing, and Hazelton was searching for a gas station so he could refuel his car. Given these factors, the Court finds that Wynne acted in good faith in placing Hazelton under arrest and is therefore entitled to assert a defense of qualified immunity to Plaintiff's state law claims. Thus, Wynne's Motion for Summary Judgment is GRANTED as to Plaintiff's state law claims.

17. In fact, Plaintiff does not address this claim in his Response.

18. In his Response, Plaintiff claims that there is a material dispute as to Plaintiff's claim under the Preamble of the United States Constitution. The Court finds that Plaintiff has wholly failed to show (or even argue) that the Preamble creates

## B. The City's Motion for Summary Judgment

■ Initially, the City seeks summary judgment as to Plaintiff's § 1983 claim for an alleged violation of the Fifth Amendment to the United States Constitution. The Court agrees with the City that summary judgment is proper as to this claim.[17] Since the due process clause of the Fifth Amendment does not apply to state actors, *see Knoetze v. United States,* 634 F.2d 207, 211 (5th Cir.), *cert. denied,* 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981), it is clear that Plaintiff cannot state an actionable Fifth Amendment claim against the City. Thus, the motion for summary judgment on Plaintiff's Fifth Amendment claim is GRANTED.

■ In addition to his Fifth Amendment claim, Plaintiff asserts a § 1983 action against the City for inadequate discipline and lack of training. It is well established that a local government entity such as a county or municipality cannot be held liable for a constitutional violation under a theory of vicarious liability or respondeat superior. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d, 1299, 1304 (5th Cir.1995), *cert. denied,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996). Instead, liability may be imposed "only where the municipality itself causes the constitutional violation at issue." *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To prevail on a § 1983 claim against a municipality, the plaintiff must therefore demonstrate that the city acted pursuant to a policy or custom that was the cause of an alleged deprivation of rights protected by the Constitution.[18] *Bryan County,* 520 U.S. at ——, 117 S.Ct. at 1388;

certain rights independent of those specifically articulated in the Constitution. Thus, the Court DISMISSES Plaintiff's claim under the Preamble and, to the extent that Plaintiff asks the Court to allow Plaintiff to replead his claim pursuant to Fed.R.Civ.P. 15(a), the Court DENIES this motion.

*Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995).

 Plaintiff can avoid summary judgment on his § 1983 claim against the City only if he presents facts that would establish the existence of a policy, practice or custom that caused the alleged deprivation of his constitutional rights. *Burns v. City of Galveston,* 905 F.2d 100, 102 (5th Cir.1990). In other words, Plaintiff is required to show that a policy or custom existed; that the governmental policy makers actually or constructively knew of its existence; that a constitutional violation occurred; and that the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532–33 (5th Cir.1996); *see also Palmer v. City of San Antonio,* 810 F.2d 514, 516 (5th Cir. 1987). The policy giving rise to municipal liability need not, however, consist of an officially adopted rule or regulation; a common practice, known to relevant policymakers, may suffice to establish that the constitutional violation was caused by the municipality itself. *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *see also Richardson v. Oldham,* 12 F.3d 1373, 1382 (5th Cir.1994). On the other hand, an isolated incident does not establish a practice or custom to form the basis for a § 1983 claim against a governmental entity. *Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir.), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). Nor is mere negligence sufficient to create § 1983 liability. *Gonzalez v. Ysleta .Indep. Sch. Dist.,* 996 F.2d 745, 759 (5th Cir.1993).

 As a preliminary matter, the Court must examine Plaintiff's First Amended Complaint to determine if he has articulated a cause of action against the City for inadequate discipline. As mandated by the June 25 Order, Plaintiff filed his First Amended Complaint and attempted to state sufficient facts to meet the elements of his § 1983 for inadequate discipline. The Court finds that Plaintiff's First Amended Complaint is insufficient to state a cause of action against the City for inadequate discipline. Plaintiff's First Amended Complaint concludes that the policy makers of the police department are aware of civil rights violations and "[t]hese acts, when discovered or reported, go largely unpunished by the Defendant City. This practice, of not punishing persons who commit civil rights violations against prisoners, in effect, has resulted in a custom or practice that works to violate the civil rights of persons who come in contact with the Grand Prairie Police Department." (Plaintiff's First Amended Complaint at 11, ¶ 14). Plaintiff also alleges that another individual in the jail informed Plaintiff that the police had broken his hand. (Plaintiff's First Amended Complaint, at 11, ¶ 12). These conclusory allegations are insufficient to satisfy Plaintiff's a burden of pleading that an official policy or custom exists. *See, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The First Amended Complaint wholly fails to allege relevant facts as to what violations occurred and how these violations resulted from the City's lack of a disciplinary policy. In addition to failing to establish that there was a policy or custom, Plaintiff has failed to identify how the City's lack of discipline was the moving force behind Plaintiff's injuries. Since Plaintiff's amended Complaint still does not assert an actionable claim, Plaintiff's § 1983 cause of action against the City for inadequate discipline is DISMISSED WITH PREJUDICE.[19]

Plaintiff has also asserted a § 1983 claim against the City for inadequate training. Specifically, Plaintiff alleges that the City did not adequately train its officers in the handling of mentally impaired individuals. A city can be liable under § 1983 when its official policies or customs in hiring and training its employees cause injury. *Benavides v. County of Wilson,* 955 F.2d 968, 972 (5th Cir.), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). In order to

---

**19.** Even if Plaintiff had successfully amended his Complaint to state a cause of action, the City would be entitled to summary judgment on this claim as to relates to Wynne. Since the Court has already found that Wynne did not violate Plaintiff's constitutional rights, Plaintiff cannot show that any inadequate disciplinary policy was the cause of his injuries.

prove that a city's hiring or training policies violated an individual's constitutional rights, the plaintiff must establish that (1) the City's hiring or training procedures were inadequate; (2) the policymaker for the City was deliberately indifferent to the constitutional rights of the citizens in adopting the hiring or training policy; and (3) the City's inadequate hiring or training directly caused plaintiff's injury. *City of Canton*, 489 U.S. at 390–92, 109 S.Ct. 1197 (1989). Having determined that Wynne did not violate Hazelton's constitutional rights, the Court finds that Plaintiff's § 1983 claim against the City for improper training necessarily fails because whatever shortcomings may have existed with the City's policies or training in handling mentally impaired individuals, these could not have cause any injury. In sum, the Court GRANTS the City's Motion for Summary Judgment as to all of Plaintiff's § 1983 claims against the City.

## III. STANDARD OF REVIEW FOR MOTION TO DISMISS

A complaint is subject to Rule 12(b)(6) dismissal if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Rubinstein v. Collins*, 20 F.3d 160 (5th Cir.1994). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court takes all factual allegations contained in the complaint as true and resolves any ambiguities or doubts regarding sufficiency of the claim in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). The Court need not, however, accept as true allegations that are conclusory in nature. *Kaiser Aluminum*, 677 F.2d at 1050 (5th Cir.1982).

### A. Moreno's Motion to Dismiss

Defendant Romero Moreno ("Moreno") asks the Court to dismiss Plaintiff's claims against him individually, asserting a statute of limitations defense. Specifically, Moreno asserts that the two year statute of limitations applicable to all of Plaintiff's causes of action has expired because the events in question occurred on September 14, 1994 but Plaintiff did not name Moreno as Defendant until October 29, 1997. In Response, Plaintiff asserts that Fed.R.Civ.P. 15(c)(3) allows Plaintiff's Second Amended Complaint to relate back to the date of the Original Complaint.[20] The Court agrees with Moreno's position and finds that the claims against Moreno are barred by the statute of limitations.

▮ Federal courts, lacking a federal statute of limitations with regard to § 1983 actions, apply the forum state's general personal injury limitations period which, in Texas, is two years. *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n. 5 (5th Cir.1995); *Slack v. Carpenter*, 7 F.3d 418, 419 (5th Cir.1993). Further, a two year statute of limitations applies to all of Plaintiff's state law claims against Moreno, and this fact is not disputed by Plaintiff. *See generally*, Tex. Civ.Prac. & Rem.Code § 16.003(a) (Vernon 1997). Under Fed.R.Civ.P. 15(c)(3), Plaintiff must show that (1) the basic claim has arisen out of the conduct set forth in the original pleading; (2) the party to be brought in has received such notice so that the party will not be prejudiced in defending the case; (3) the party must have known or should have known that but for a mistake concerning identity, the action would have been brought against the party; and (4) the second and third requirements occurred within the period prescribed by Rule 4(m) for service of the summons and complaint (i.e., 120 days after the filing of the Complaint).[21]

**20.** Initially, Plaintiff asserts that Fed.R.Civ.P. 15(c)(2) allows him to add Moreno as a Defendant since the claim against Moreno comes from the same occurrence alleged in the Original Complaint. The Court is unconvinced that Rule 15(c)(2) applies, however, since Moreno was not a named Defendant in the Original Complaint. Since the Second Amended Complaint names

Moreno as a party for the first time, Plaintiff must fulfill the requirements of Rule 15(c)(3) to avoid dismissal of his claims against Moreno individually.

**21.** In *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the Supreme Court held that the fourth element of Rule 15(c)

■ The Court finds that Plaintiff has not satisfied the requirements of Rule 15(c)(3) and therefore Plaintiff's Second Amended Complaint does not relate back to the filing of the Original Complaint. There is no dispute that the first requirement has been met, as the claims against Moreno individually clearly arise out of the claims asserted in the Original Complaint. As such, Plaintiff must demonstrate that Moreno had sufficient notice of the complaint and that fading to name him as a Defendant was the result of a mistake. *See Jacobsen*, 133 F.3d 315, 319 (discussing the requirements of Rule 15(c)(3) and holding that both the notice and mistake elements must be satisfied for relation-back to apply).

Initially, the Court finds that Plaintiff has not shown that Moreno received sufficient, timely notice to insure that he will not be prejudiced in defending this case. Plaintiff properly served the City on September 10, 1996, a mere four days before the limitations period expired. According to Moreno's Motion to Dismiss, however, Moreno has not been employed by the City since December 2, 1994 and Plaintiff has not offered any evidence to counter this claim. Further, Moreno is represented by a different attorney than are the City and Wynne.[22] Plaintiff named Moreno as a Defendant more than three years after the alleged incident occurred, the case has been pending for seventeen months, and there is a March 2, 1998 trial date. Plaintiff has failed make the required showing that Moreno received notice of an action being brought against him individually within the time limitation in Rule 15(c)(3).

Even if Plaintiff could show that Moreno had sufficient notice, Plaintiff has failed to meet the mistake element of Rule 15(c)(3) as required by the Fifth Circuit. *See Jacobsen*, 133 F.3d at 319, 321. Plaintiff essentially admits that he could not identify Moreno as the individual in the jail until recently and well after the time period in Rule 15(c)(3) expired. Plaintiff has not shown that he simply misidentified Moreno due to a mistake; instead, Plaintiff did not know his identity at all. Plaintiff has therefore failed to satisfy the misidentification situation which Rule 15(c)(3) seeks to address. *See Jacobsen*, 133 F.3d 315, 321.

In short, Plaintiff has failed to meet two of the requirements set forth in Rule 15(c)(3). Plaintiff has failed to demonstrate that Moreno had sufficient notice of this action within the time period perscribed in Rule 15(c)(3). Further, Plaintiff has not shown that failing to name Moreno as a Defendant was the result of a mistake. Thus, Plaintiff cannot avail himself of Rule 15(c)(3) and his claim against Moreno is barred by the statute of limitations. Moreno's Motion to Dismiss is GRANTED.

### B. The City's Motion to Dismiss

■ In its Motion to Dismiss, the City asserts that Plaintiff's First Amended Complaint fails to state a cause of action under § 101.021 of the Texas Tort Claims Act.[23] In

---

required the second and third elements to be met within the prescribed limitations period. *Schiavone*, 477 U.S. at 29, 106 S.Ct. 2379; *see also*, *Honeycutt v. Long*, 861 F.2d 1346, 1350 (5th Cir.1988); *Lamb v. U.S. Postal Serv.*, 852 F.2d 845, 847 (5th Cir.1988). Due to the result in *Schiavone*, however, Congress changed this fourth element when it amended Rule 15(c) in 1991 and the relevant time frame is now measured by Rule 4(m). *See* Fed.R.Civ.P. 15, Advisory Committee Note (1991); *see also*, *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir.1998).

**22.** Plaintiff's counsel asserts that he spoke to counsel for the City and Wynne concerning the identity of Moreno. Plaintiff's counsel claims that counsel for the City and Wynne indicated that he had spoken to an attorney representing Moreno "very early in this case." From this,

Plaintiff assumes that "[s]urely that conversation would have taken place" within the relevant time of Rule 15(c)(3). (Plaintiff's Response, at 4). The Court is unconvinced. First, there is no evidence to support Plaintiff's assertions that the conversation took place within the Rule 15(c)(3) time frame. Second, Plaintiff has wholly faded to show that this alleged conversation between counsel for the City and Wynne and counsel for Moreno was sufficient to give Moreno such notice of the lawsuit that Moreno would not be prejudiced in defending this lawsuit, as required by Rule 15(c)(3).

**23.** In the June 25 Order, the Court afforded Plaintiff the opportunity to amend his Complaint and state sufficient facts to overcome the City's sovereign immunity defense. (June 25 Order, at 16).

the First Amended Complaint, Plaintiff claims that the negligent use of tangible property (i.e., the handcuffs used when the officials moved Hazelton to a different cell) caused injury to him.[24] It is generally agreed that the trial court enjoys broad discretion in deciding whether to remand/dismiss pendent state claims to state court or to retain them for trial. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 352–57, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Welch v. Thompson,* 20 F.3d 636, 644 (5th Cir.1994). A district court "should decide whether to retain jurisdiction based on considerations of judicial economy, convenience, fairness to litigants, and comity." *Cinel v. Connick,* 15 F.3d 1338, 1344 (5th Cir.1994) (citing *Carnegie–Mellon Univ.,* 484 U.S. at 350 n. 7, 108 S.Ct. 614). Accordingly, the Fifth Circuit has reiterated on more than one occasion that state claims should normally be remanded or dismissed when the federal claims to which they are pendent are dismissed before trial. *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989)). Because the only claim left in this matter is Plaintiff's state cause of action against the City under the Texas Tort Claims Act, the Court orders that this claim be DISMISSED WITHOUT PREJUDICE. Plaintiff may refile this sole, undetermined issue in the appropriate state court if he so desires.

## CONCLUSION

Upon careful review of the parties' arguments and the applicable law, the Court hereby orders the following:

1. Wynne's Motion for Summary Judgment on all of Plaintiff's claims (§ 1983 and state tort law claims) against him

individually is GRANTED in its entirety;

2. The City's Motion for Summary Judgment on Plaintiff's § 1983 claim for failure to train is GRANTED;

3. Plaintiff's § 1993 claim against the City based on inadequate discipline is DISMISSED WITH PREJUDICE;

4. Moreno's Motion to Dismiss is GRANTED in its entirety; and

5. Plaintiff's claim against the City under the Texas Tort Claims Act is DISMISSED WITHOUT PREJUDICE.

**So Ordered.**

---

24. It should be noted that by Plaintiff's own admission, there is no claim against the City for any negligent use of tangible property by Wynne. In Plaintiff's Response to the Motion to Dismiss filed by the City and Wynne on July 24, 1997, Plaintiff states "[t]here is no claim against Defendant Wynne based on the use of handcuffs." (Plaintiff's Response, at 2). Further, Plaintiff states that "Wynne is innocent of any wrongdoing *in regards to the handcuffs.*" (Plaintiff's Response, at 3) (emphasis in original). The doctrine of judicial estoppel prevents a party from

asserting a position in a legal proceeding that is contrary to a position taken earlier in the same or related proceeding. *Ergo Science, Inc. v. Martin,* 73 F.3d 595, 598 (5th Cir.1996). The Fifth Circuit has recognized this doctrine "because of its laudable policy goals" which prevents parties from playing "fast and loose with the courts." *Id.* To the extent that Plaintiff's Second Amended Complaint asserts a cause of action under the Texas Tort Claims Act against the City for negligent use of tangible property by Wynne, these claims are DISMISSED WITH PREJUDICE.