REVISED JANUARY 31, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-41022

MARK HARRY GABRIEL,

Plaintiff-Appellant,

VERSUS

CITY OF PLANO TEXAS; OFFICER MARK HUNT, in his official capacity as a member of the City of Plano Police Department; OFFICER TERRY PAULEY, in his official capacity as a member of the City of Plano Police Department; and OFFICER ROBERT LEITZ, in his official capacity as a member of the City of Plano Police Department,

Defendants-Appellees.

Appeal from the United States District Court
For the Eastern District of Texas
January 28, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Mark Harry Gabriel ("Gabriel") challenges the district court's denial of equitable remedies under 42 U.S.C. § 1983. For the reasons stated herein, we AFFIRM the district court's ruling in favor of Defendants-Appellees.

BACKGROUND

Appellant Gabriel is an itinerant preacher and anti-abortion activist. Gabriel has engaged in a number of anti-abortion

protests near R.C. Clark High School[1] in Plano, Texas. The first of these protests began at approximately 8:00 a.m. on August 27, 1996. Gabriel, waiving an anti-abortion sign and preaching his message in a loud voice, stood in an open grassy area at the front of Clark High. Over 100 students were already at Clark High during this demonstration and many more arrived by bus over the course of the protest.[2] Officer Robert Leitz, the Plano Police Department's ("PPD") liaison officer at Clark High, approached Gabriel and informed him that he should limit his protest to a seven foot strip of land within the grassy area.[3] Furthermore, Officer Leitz asked Gabriel not to attempt to draw the students away from the school. Officer Leitz did not arrest Gabriel, nor did he issue Gabriel a written warning. Gabriel left at 8:50 a.m.

On August 28, 1996 Gabriel returned to Clark High at 8:30 a.m. and began protesting and distributing literature. This time Gabriel limited his activities to a sidewalk located near the

---

[1]The Plano Independent School District ("PISD") operates Clark High.

[2]The first regularly scheduled class at Clark High begins at 8:45 a.m. Clark High offers its students a number of "zero hour" activities that start as early as 7:00 a.m. These activities include band practice, music lessons, wood shop, athletic practices, PSAT classes, and tutoring.

[3]According to trial testimony, Leitz believed that this seven foot area was a city easement in which protesting was authorized. In actuality, a public right of way extends thirty-three and one-half feet from the edge of the road running along the southern boundary of Clark High onto the school grounds across the entire front of the campus.

school's western boundary.[4]    Shortly after 8:30 a.m., Vice Principal Doug Damewood told Officer Leitz that Gabriel had trespassed on school property in the course of his protest. Damewood and Officer Leitz approached Gabriel.   At Damewood's request, Officer Leitz issued a verbal warning to Gabriel that he was trespassing on school property.

At 7:45 a.m. on September 3, 1996, Gabriel returned to the grassy area in front of the school and began protesting.  Gabriel waived a foam placard depicting an aborted fetus with the word "abortion" printed beneath the picture.  While waiving the placard and shouting his religious message, Gabriel attempted to distribute literature to the students.  Officer Leitz along with PPD officers Mark Hunt and Terry Pauley were present from the beginning of the demonstration.  PPD Sargent Ronald Smithheart and PPD Lieutenant Paul Rimka arrived later.

Gabriel's protest caused agitation among the students attending zero hour classes and those arriving to start their regular class day.  School officials had to cancel a number of zero hour classes that day and delayed the start of other classes by approximately forty-five minutes.   The trial court found that Gabriel's activities not only caused many students to be late for class, but also caused dangerous traffic conditions.

As the protest escalated Officers Hunt and Pauley approached

---

[4]The entire length of the sidewalk in this area is located within the thirty-three and one-half foot public right of way.

3

Gabriel and requested that he identify himself. Gabriel refused. Officer Hunt left the scene and went to discuss the situation with the Principal of Clark High, Jimmy Spann ("Spann"). Spann indicated that he and his staff were having difficulty getting students off of the school's buses and into the school as a result of the protest. Officer Hunt returned to the scene and repeatedly requested that Gabriel put down his sign. Gabriel refused. Gabriel swung the sign at Officer Hunt's head, at which time Officer Hunt grasped Gabriel's wrist.[5] Upon being grabbed, Gabriel dropped to the ground and released the sign. Officer Hunt then informed Gabriel that he was disrupting classes in violation of section 37.124[6] of the Texas Education Code and requested that Gabriel leave. Gabriel left.[7] Officer Hunt did not arrest

---

[5]Gabriel contests this issue and insists that he did not swing his sign at Officer Hunt. The trial court's resolution of this dispute in favor of Appellees is immaterial to the resolution of the case.

[6]Section 37.124 reads in relevant part, "A person commits an offense if the person, on school property or on public property within 500 feet of school property, . . . intentionally disrupts the conduct of classes or other school activities." TEX. EDUC. CODE ANN. § 37.124(a) (West 1996). Disrupting "the conduct of classes or other school activities" includes in relevant part: "enticing or attempting to entice a student away from a class or other school activity that the student is required to attend" and/or "preventing or attempting to prevent a student from attending a class or other school activity that the student is required to attend." TEX. EDUC. CODE ANN. § 37.124(c)(1)(B)-(C) (West 1996).

[7] Gabriel alleges that he left under threat of arrest.

4

Gabriel, nor did he issue Gabriel a citation.[8]

As a result of the September 3rd incident, Gabriel sued the City of Plano (the "City") and Officers Leitz, Hunt, and Pauley, in their official capacities, under 42 U.S.C. § 1983. Gabriel asserted six theories of recovery: (i) City custom and policy abridged his First Amendment right to free speech; (ii) City custom and policy abridged his right to free exercise of religion; (iii) unreasonable use of force; (iv) section 37.124 was void for vagueness as applied to Gabriel; (v) section 37.124 as applied by the PPD to Gabriel was unconstitutionally overbroad; and (vi) the City has selectively enforced section 37.124 in violation of the equal protection clause of the Fourteenth Amendment. Gabriel sought equitable remedies under section 1983: a declaratory judgment that his speech and activities around Clark High were constitutionally protected and a permanent injunction prohibiting the defendants from enforcing section 37.124. The district court ruled for the Defendants on all counts. Gabriel appealed, challenging a number of the district court's findings of fact and conclusions of law[9] as well as six of

_____

[8]According to Appellees, Gabriel has returned to Clark High several times since September 3, and engaged in peaceful, non-disruptive protests for which he has not been arrested or asked to leave. Gabriel indicates that he has never returned to protest in the public right of way in front of Clark High. Both parties agree that a number of peaceful anti-abortion protests have taken place at Clark High and other public high schools in Plano since September 3.

[9]Gabriel did not appeal the district court's unfavorable rulings on his unreasonable force, free exercise, and vagueness claims. Accordingly, these issues are not properly before this

5

the court's evidentiary rulings.

## STANDARDS OF REVIEW

We review a denial of declaratory or injunctive relief for abuse of discretion. See In re Schimmelpenninck, 183 F.3d 347, 353 (5th Cir. 1999). In reviewing judgments on the merits in non-jury civil cases, we review conclusions of law de novo and conclusions of fact for clear error. See North Alamo Water v. City of San Juan, 90 F.3d 910, 915 (5th Cir. 1996).

We review evidentiary rulings for abuse of discretion. Johnson v. Ford Motor, Co., 988 F.2d 573, 578 (5th Cir. 1993). "A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence." Southern Pacific Trans. Co. v. Chabert, 973 F.2d 441, 448 (5th Cir. 1992). We reverse judgments for improper evidentiary rulings only "where the challenged ruling affects a substantial right of a party." Johnson, 988 F.2d at 578. "The burden of proving substantial prejudice lies with the party asserting error." McDonald v. Steward, 132 F.3d 225, 232 (5th Cir. 1998).

## DISCUSSION

In order to recover under section 1983, Gabriel must prove that his constitutional rights were violated as a result of a custom or policy of the City. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Gabriel insists that the

court.

City's failure to train its police officers in the Texas Education Code, property boundaries of Clark High, and First Amendment rights of access to public fora resulted from a policy or custom of the City.

Section 1983 liability for failure to train police officers arises only when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). In other words, Gabriel's burden is three-fold; he must prove that: (1) his rights were violated as a result of (2) a municipal custom or policy of (3) deliberate indifference to his rights.

In failure to train cases, the plaintiff can prove the existence of a municipal custom or policy of deliberate indifference to individuals' rights in two ways. First, he can show that a municipality deliberately or consciously chose not to train its officers despite being on notice that its current training regimen had failed to prevent tortious conduct by its officers. See Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 405 (1997). Second, under the "single incident exception" a single violation of federal rights may be sufficient to prove deliberate indifference. See Bryan County, 520 U.S. at 409. The single incident exception requires proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training. See id. We have

7

consistently rejected application of the single incident exception and have noted that "proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training."  Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998); see also, Rodriquez v. Avita, 871 F.2d 552, 554-55 (5th Cir. 1989).

Appellant argues that the trial court erred in failing to consider the single-incident exception.  Gabriel bases his argument on a statement from the bench that it would "let [Gabriel] save that [single incident] argument for the Fifth Circuit Court of Appeals.  And then if need be, for the Supreme Court of the United States."  What Appellant fails to cite is the trial court's next statement, which explained that the court rejected the single incident argument because it was "not persuaded by it."  Contrary to the Appellant's assertion, the district court did not ignore his single incident exception argument; but rather, simply found it unpersuasive.  Moreover, judging from the trial court's extensive reliance on Canton and Bryan County in its conclusions of law, we are convinced that the trial court gave the Appellant's argument due consideration.

Turning to the merits of Appellant's failure to train claim, we find no error in the trial court's conclusions that Gabriel did not meet his burden of proving a municipal policy or practice of infringement of federal rights.  Moreover, we do not find any abuse of discretion rising to the level of substantial prejudice in the

8

trial court's contested evidentiary rulings. Accordingly, we AFFIRM the trial court's judgment in favor of Defendants-Appellees.