IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-60462
Summary Calendar
_____

JAMES WALTER HOVER, II,

Plaintiff-Appellant,

versus

ADAM H. BRENNER; CITY OF MERIDIAN, MISSISSIPPI;
GREG LEWIS; JOHN DOE #1; JOHN DOE #2,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 4:97-CV-79-LN
--------------------
August 7, 2000

Before HIGGINBOTHAM, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

James Hover appeals a grant of summary judgment and a jury verdict in favor of the defendants in his 42 U.S.C. § 1983 civil rights suit. For the following reasons, we AFFIRM.

I

Hover and his cohort John McClelland participated in a drive-by shooting in which McClelland allegedly fired a gun from the window of Hover's car in order to scare Richard Caffey. Police later spotted the car and signaled for them to stop. Hover pulled into a parking lot as if to stop, but decided not to stop because McClelland had drugs on him. Hover then led police on a 7 mile

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

chase during which the drugs were thrown out of the car. Hover eventually stopped in a church parking lot.

Officer Brenner and Officer Thomas began to apprehend the suspects, telling them to keep their hands in the air. Thomas dragged McClelland out of the car. Brenner approached Hover's side of the car and opened Hover's door. According to Brenner, Hover then made a movement with his right hand toward the space beneath his seat while turning to get out of the car, and Brenner shot Hover in the jaw.

Hover says that before he was shot, he merely turned his torso slightly toward Brenner and asked if he could put the car in park so that it would not move forward when he took his foot off the brake. Hover states that he never reached down toward the console or the seat.[1]

Hover sued Brenner, as well as the city and police chief in their official capacities. The district court dismissed the municipal liability claims against the city and police chief before trial. At trial, the jury found no liability for Hover's claim against Brenner for the use of excessive force.

Hover appealed the verdict and dismissal, arguing that the district court improperly limited Keith Oubre's expert testimony; that the district court improperly admitted evidence of Hover's drug use, Hover's poor grades, and threats by Hover's father; that the district court improperly instructed the jury; that the jury's

---

[1] It was later determined that there was no gun in the car because the suspects had previously dropped it off at McClelland's home.

verdict was against the weight of the evidence; and that the district court erred in granting summary judgment in favor of the City of Meridian and Chief Greg Lewis.

## II

Hover was free to call Oubre as a witness to testify whether Brenner's use of force was objectively reasonable. The only limitation was that Oubre would not be allowed to testify that Brenner violated certain police procedures and created the need to use deadly force. Hover failed to call Oubre as a witness and did not make an offer of proof. Thus, the district court's limitation of Oubre's testimony is subject only to plain error review.[1] Plain error review in civil cases is an extraordinary remedy for use only in exceptional cases,[2] cases which "affect[] the fairness, integrity, or public reputation of the trial court's proceedings."[3]

In this circuit, § 1983 liability cannot be premised on the fact that an officer "creates the need" to use excessive force by failing to follow police procedure.[4] The Second and Eighth Circuits have further held that the failure to follow procedure prior to the moment of seizure is therefore not relevant in determining whether the officer's use of force was objectively

---

[1] See United States v. Graves, 5 F.3d 1546, 1551-52 (5th Cir. 1993).

[2] Sandidge v. Salen Offshore Drilling Co., 764 F.2d 252, 262 n. 9 (5th Cir. 1985).

[3] 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2558 at 469 (2d ed. 1995).

[4] See Fraire v. City of Arlington, 957 F.2d 1268, 1275-76 (5th Cir. 1992).

reasonable during the actual seizure.[5]

This circuit has not addressed the precise issue of whether such evidence may be relevant to prove a theory other than a "creation of the need" theory, but for the purposes of our plain error analysis it suffices that none of our cases oppose the Second and Eighth Circuit's view that violations before the seizure are irrelevant.[6]

Recognizing this, Hover argues that by stopping in the church parking lot, he submitted to police authority and that submission constituted a seizure. Therefore, he says, violations of police procedure after that point were relevant to determining whether Brenner's use of force was objectively reasonable. However, if Hover suddenly reached below his seat and tried to get out of the car after being told not to move, Hover's submission and any related seizure, obviously ended.[7] When Brenner shot Hover, Hover was seized again. Thus, evidence that proper police procedure was not followed was at best only conditionally relevant: <u>i.e.</u>,

---

[5]<u>See</u> <u>Salim v. Proulx</u>, 93 F.3d 86 (2d Cir. 1996); <u>Schulz v. Long</u>, 44 F.3d 643, 648-49 (8th Cir. 1995). As the Eighth Circuit has noted, police procedures are primarily for the protection of police officers, not armed suspects. <u>See</u> <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1203 (8th Cir. 1999).

[6]<u>See</u> <u>Rushing v. Kansas City Southern Ry. Co.</u>, 185 F.3d 496, 506 (5th Cir. 1999) (stating that to prove plain error, a party must demonstrate error that is "clear and obvious under current law").

[7]Arguably, even the fact that Hover stopped the car in the church parking lot did not unequivocally indicate his submission to the police, given his recent actions. Before leading police on a 7 mile chase, Hover pulled into a parking lot as if to stop only to speed off again. Furthermore, when Hover stopped the car in the church parking lot, he kept it running and in drive. The only reason it was not moving was because his foot was on the brake. Given Hover's previous actions, including the chase, there exists a reasonable inference that Hover may have intended to simply speed away again under the right circumstances, since he could have done so even with his hands in the air.

relevant if the jury decided that Hover had made no sudden movements.

Of course, if a jury were to find that Hover had made no sudden movements, Brenner's use of deadly force would almost certainly have been excessive. In that situation, evidence of Brenner's earlier failure to follow proper police procedure would have been of little to no marginal probative value. More importantly, if that evidence had been conditionally admitted and the jury found that Hover <u>had</u> make a sudden movement, the evidence would have been irrelevant under the view of the Second and Eighth Circuits. If the jury went ahead and considered the evidence despite any limiting instruction, Brenner would have suffered unfair prejudice.

Under Rule 403, a district court would have the discretion to exclude conditionally relevant evidence if its marginal probative value was at best de minimis and substantially outweighed by the danger that a limiting instruction regarding conditional relevance would have been ineffective.[8] This is not to say that such evidence would necessarily have been inadmissible, but only to show that a district court's exclusion of this evidence would not obviously have been an abuse of discretion. Consequently, we cannot say that the district court's limitation on Oubre's

---

[8]<u>See</u> FED. R. EVID. 403 advisory committee's note ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."); <u>Old Chief v. United States</u>, 519 U.S. 172, 184 (1997) (stating that the Rule 403 balancing test involves a consideration of the marginal probative value of evidence).

potential testimony created plain error.

III

Hover did not properly object to the introduction of the drug evidence so he is limited to plain error review on this issue as well. After Hover was shot, Hover's blood tested positive for cannabinoids (marijuana), and drug paraphernalia was found in his car. At trial, Hover was questioned about this as well as past drug use.

The blood evidence and drug paraphernalia was probative of Hover's drug use on the day in question, which was relevant in assessing Hover's ability to recall the events of that day,[9] and Hover's own counsel introduced the drug paraphernalia evidence.

Similarly, with respect to Hover's use on other occasions, Hover's counsel initially elicited the fact of such use as well. Hover denied smoking marijuana on the day in question, but Hover's counsel then asked Hover what effect marijuana had on his system. By answering that it had a calming effect, Hover admitted to having used marijuana at some time other than the day in question and implied that it did not impair his senses.

Having opened the door, Hover cannot complain that opposing counsel then questioned him on that issue. Furthermore, Hover cites no controlling authority that the introduction of such evidence was improper nor does he argue that the introduction of

---

[9]See Isonhood v. State, 274 So.2d 685 (Miss. 1973).

the evidence affected his substantial rights. Accordingly, Hover fails to carry his burden of demonstrating plain error.[10]


IV

Hover did not properly brief the issues of the introduction of his poor grades and his father's threats because he did not provide authorities in support of his claim, and the issues may be deemed abandoned.[11] Alternatively, the introduction of his poor grades was both relevant and admissible in order to rebut Hover's attempt to inflate his claim of lost future earnings by saying he intended to go to dental school.[12]


V

The evidence regarding Hover's father's threats against McClelland was relevant and admissible for the purpose of demonstrating McClelland's possible bias. As indicated by the trial court's limiting instructions, this evidence was not admitted to prove that Hover's father actually threatened McClelland, but was only offered to prove that McClelland was operating under the belief that Hover's father had made such a threat to McClelland's father.[13]

---

[10]See Tompkins v. Cyr, 202 F.3d 770, 779 (5th Cir. 2000).

[11]See FED. R. APP. P. 28(a); L & A Contracting v. Southern Concrete Servs., Inc., 17 F.3d 106, 113 (5th Cir. 1994).

[12]See FED. R. EVID. 401, 402, 403.

[13]See id.; FED. R. EVID. 801.

VI

The allegedly erroneous jury instruction regarding qualified immunity was not determinative of the outcome of the trial since the jury never answered the qualified immunity question because they found that Brenner's use of force was objectively reasonable under the circumstances. Thus, the issue of qualified immunity was irrelevant to the jury's verdict and the instruction cannot be a basis for reversible error.[14]

VII

Hover abandoned his claim that the jury verdict was against the overwhelming weight of the evidence because he did not properly brief the issue by providing citations to the record or providing authority in support of his assertions.[15] Alternatively, review is limited to plain error because Hover failed to timely move for a judgment as a matter of law before the case was submitted to the jury, and the verdict will be upheld if some evidence supports the verdict.[16]

In addition to Officer Brenner's testimony which, if believed, justified the use of deadly force, a police expert in the use of force testified that Brenner's use of force was objectively reasonable, and a forensic scientist testified that Hover's

---

[14]See Bender v. Brumley, 1 F.3d 271, 276 (5th Cir. 1993).

[15]See FED. R. APP. P. 28(a); L & A Contracting, 17 F.3d at 113.

[16]See United States ex rel. Wallace v. Flintco Inc., 143 F.3d 955, 960 (5th Cir. 1998); FED. R. CIV. P. 50(a).

bloodstain pattern indicated that Hover was getting out of the car despite being commanded not to move. Thus, the verdict was supported by some evidence.


VIII

Hover argues that the district court erred in dismissing Chief Lewis in his official capacity and the City of Meridian on Hover's municipal liability's claims relating to the training and supervision of Officer Brenner.[17]

To succeed on such claims, Hover must show that the training and supervision procedures of the municipality's policymaker were inadequate, that the municipality was deliberately indifferent in adopting those procedures, and that the inadequate procedures directly caused the plaintiff's injury.[18]

Hover does not identify any specific deficiency in the department's training or supervisory procedures or any evidence of

---

[17]Hover originally alleged a claim based on the hiring of Officer Brenner, but has not specifically argued against the dismissal of that specific claim on appeal and it may be deemed abandoned. See FED. R. APP. P. 28(a); L & A Contracting, 17 F.3d at 113 (5th Cir. 1994).

Alternatively, we would affirm dismissal on this claim for essentially the same reasons put forward by the district court. The only evidence of a problem in Brenner's background when he was hired was that he checked "yes" on his employment application indicating that he was aware of one or more "unsatisfactory report[s] of character or personal habits which would jeopardize [his] ability to perform the particular class of work [he was] applying for" and a letter of recommendation which, while positive overall, mentioned that Brenner had "encountered a few problems during his probationary rating period."

These "problems" were not specified, nor did Hover ever depose Brenner with regard to the existence or contents of any "unsatisfactory reports." As such, the district court held and we agree that "[t]he allegations in the case at bar related to Brenner's background rise nowhere near the level of those" in Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997), where "the Court found that the hiring procedures were adequate."

[18]See Conner v. Travis County, 209 F.3d 794, 796-97 (5th Cir. 2000).

a policy authorizing the use of excessive force. Hover mainly argues that Brenner failed to abide by standard police procedure. Even if true, this does not evidence that Brenner's training was deficient. As even Hover concedes, Brenner may have "deliberately ignored what training he did receive,"[19] which would mean that Brenner was at fault, not his prior training. Further, the fact that one episode of violence did occur – Brenner's shooting of Hover – is also insufficient to imply the existence of inadequate training or supervision.[20]

Hover does have evidence that approximately four citizens complained about Brenner in the past, but none of these complaints related to the use of deadly force. Three citizens were upset that Brenner handcuffed and arrested them for minor offenses. One of these complaints (involving two citizens), was investigated and it was determined that Brenner had not used excessive force or violated procedure. With respect to the third citizen, there is no evidence that she ever filed a formal complaint. The fourth citizen formally complained that Brenner sprayed him with mace during an arrest and hit him in the mouth. This complaint, however, was investigated by the police department and found to be

---

[19]Brief of Appellant, at 28.

[20]See Gabriel v. City of Plano, 202 F.3d 741, 745 (5th Cir. 2000) ("We have consistently rejected application of the single incident exception and have noted that 'proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.'") (quoting Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998)); Snyder, 142 F.3d at 798 ("The plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured ... to establish the official policy requisite to municipal liability under § 1983.'") (quoting Rodriguez v. Avita, 871 F.2d 552, 554-55 (5th Cir. 1989) (internal quotation and citations omitted))).

meritless.

Given the above, Hover has failed to generate a question of material fact that the City or Chief Lewis was "deliberately indifferent" to the need for greater training or supervision to prevent the incorrect use of deadly force. Such a need must be "obvious,"[21] and the failure to address the need must be "likely to result in violations of constitutional rights,"[22] and amount to more than mere negligence.[23] As such, deliberate indifference cannot be inferred from these prior complaints or the police department's handling of them. The complaints demonstrated no obvious need for greater training with respect to the use of deadly force, and the formal complaints were investigated and found to be without merit.

Hover also attempted to demonstrate that the police department had a policy of ratifying the actions of police officers regardless of their legality. Hover inferred this from the fact that Brenner was not disciplined for shooting Hover after an internal police investigation. Not only does this presuppose that Brenner's actions required some form of punishment, but also it impermissibly attempts to prove the existence of an official city policy by the observation of a single incident.[24]

---

[21]Conner, 209 F.3d at 796 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

[22]Conner, 209 F.3d at 796 (quoting City of Canton, 489 U.S. at 390).

[23]See Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992) ("While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight.").

[24]See Frair v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992).

Hover contends that such a policy may be inferred because Brenner's police file did not contain any of the mentioned citizen complaints. As noted, however, the police did investigate two of the three prior complaints and absolved Brenner on both. More importantly, there was no competent summary judgment evidence that any complaints were formally filed except for the one involving the mace. In that instance, Brenner was absolved but the police misfiled the complaint under the name of the complainant rather than the officer, which does not indicate deliberate indifference.

Hover did provide the affidavit of a former police officer who knew of Brenner but did not work with him. In that affidavit, the officer stated that another police officer told her that the department had received complaints about Brenner in the past. That statement, however, is inadmissible hearsay to show the existence of any other complaints. Consequently, Hover has failed to create a fact question regarding the existence of a policy of always ratifying the actions of police officers either through failing to punish Brenner or by turning a blind eye to citizen complaints.

In sum, Hover's summary judgment evidence does not generate a fact question as to whether the department had a policy that explicitly authorized the use of excessive force, treated formal complaints with deliberate indifference, ratified the actions of its officers regardless of their legality, or was deliberately indifferent to the need for different or additional training in the use of deadly force. For all of these reasons, there was no basis

for municipal liability and dismissal was proper.[25]

AFFIRMED.

---

[25]Although not a basis for our decision, we note that the plaintiff is likely precluded from recovering damages from the municipality for another reason. A jury found that Brenner's actions created no constitutional violation. Thus, even if departmental policy authorized unconstitutional conduct, no municipal liability can attach when the plaintiff's only theory is that the municipality is liable for the officer's unconstitutional conduct, since none occurred. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Saenz v. Heldenfels Bros., Inc., 183 F.3d 389, 392 (5th Cir. 1999).

Other circuits have held that municipal liability can survive for an independent constitutional violation committed by the municipality that harms the plaintiff. See, e.g., Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. 1994) (holding that even if police officers had probable cause to arrest a plaintiff under a city ordinance, dismissal of the city was unwarranted because city's liability was based not on lack of probable cause, but on the unconstitutionality of the ordinance, and "if the ordinance is unconstitutional, [the plaintiff] suffered constitutional injury despite the ordinance's applicability to his conduct").

Hover does not argue that an independent constitutional violation occurred here. Instead, Hover simply argues that because the city ratified Brenner's actions and failed to properly train and supervise him, the city should be held liable for Brenner's unconstitutional use of excessive force.